The first case scheduled for argument this morning is United States v. McCall, No. 19-465. Counsel, please proceed. Thank you, Your Honors. Good morning. I'm Sam Callahan, and I represent the appellant, Mr. William McCall. Your Honors, last week's decision in United States v. TAB certainly narrows my client's path to victory, but TAB leaves this Court free to conclude that the guideline's definition of a controlled substance offense by its unambiguous terms does not cover inchoate offenses like conspiracy. Well, you're saying that regardless of what we just found and issued in TAB about the effect of the application note and our prior decision? That's right, Your Honor. Yes? I am. And the reason I'm saying that is— You're threading a needle. It is a threading of a needle, but I believe that it can be threaded, if I'm getting the analogy correct. TAB's sole basis for holding that the guideline covers conspiracy offense was its conclusion that the Court's 1995 decision in Jackson fully controlled the question. It said, quote, we are not at liberty to revisit Jackson, and that was the end of the matter. But TAB did not so much as mention the United States Supreme Court's decision in Kisor v. Wilkie, which I submit completely supersedes Jackson's approach to evaluating the relationship between sentencing guidelines and commentary. I don't understand, counsel, just because they didn't mention the Kisor case. Kisor was before that decision. I went back and looked at TAB. There was a supplemental submission— I can't hear you, Judge Bielanski. Yes, I'm sorry, Judge Winter. There was a—in TAB, there was a supplemental submission regarding Kisor that was before this Court, and then the Court rendered its decision after Kisor, and in footnote 8 of the TAB decision, the specific argument that you're referencing to us about the ambiguity that may or may not exist was rejected in footnote 8 of the TAB decision. So explain why you think we are not controlled by that decision when this exact argument was made after Kisor and was decided by this Court. I don't see—I don't see any threading that's available, but maybe I'm missing something. Yeah. If I could address those two points in order, the first being that TAB was raised to the Court. No, it's— Kisor was— Oh, I'm sorry, Your Honor. Yes. The Kisor was raised to the TAB Court. Right. Your Honor, it's black-letter law in this circuit and in other circuits that the assumptions that underlie a decision and a holding are not binding precedent. So to the extent that the Court could have found Kisor, as you said, in this supplemental brief and could have addressed it, it chose not to. So this panel is not bound. This is quite a different situation from what happens following Supreme Court cases in other contexts where sometimes the Supreme Court will decide an important case and then a subsequent panel will say the Supreme Court decision has not changed our framework, our prior precedent applies. In that case, the panel's holding as to the effect of the Supreme Court decision is controlling. But here there wasn't even a mention of Kisor. It was just if it didn't exist. And to get— This Court's prior precedent, along with additional rules of statutory interpretation, resolve any ambiguity in the sentencing guidelines decidedly against TAB. Accordingly, the rule of lenity has no application here. Your Honor, my understanding of that footnote is that it's saying the combination of the guideline itself and the commentary together may create some ambiguity. You'll notice that at this point in the opinion it's addressing the categorical approach argument, which has to do with the effect of Application Note 1. So this is not a statement from the Court that the guideline is ambiguous in such that the commission can interpret that ambiguity for — via Application Note 1. This is a statement that in toto, if there's any ambiguity as to whether Application Note 1 covers conspiracies that don't have an overt act, that ambiguity is resolved against the defendant. And if I may, Your Honors, I think even the government would have to accept that if a Supreme Court decision directly on point came down and said you have to apply the sentencing guidelines a certain way, and then a panel of this Court didn't even mention the Supreme Court decision, I don't think that would bind panels, you know, forever more to never apply the Supreme Court decision. In fact, that principle is the law in many circuits. The Fifth Circuit had a recent case that said when a decision doesn't address the effect of a Supreme Court decision, that is not binding going forward. And I would submit that Kisor really does squarely resolve the question presented here. A straightforward application of Kisor shows that the plain text of Section 4B1.2 does not cover conspiracy offenses. It's a defined list. It says it — the definition of a controlled substance offense, it means a list of substantive completed offenses. It does not include conspiracy. The commission, as we explained in our briefs, included inchoate offenses. I — while you're rehearsing this well-worn argument, the district judge there, who's now a circuit judge, said it didn't matter because he would have given the same sentence anyway. So why are we dwelling on all this? Your Honor, to the extent you're suggesting harmless error was a possibility here, I would start by just pointing to how stringent the standard is and how much it favors my client. The standard for harmless error is that it needs to be unambiguous — The standard may be — may be stringent, but he said it is a controlled substance, however they characterize it, and it is not going to change my sentence here. Well, Your Honor, to the extent that the statement about imposing the same sentence could render the error harmless, that is foreclosed by this Court's decision in Feldman, where it says that those types of statements do not insulate sentences from review. And here there's much more. No. I looked at Feldman. Feldman — there were four procedural errors, and there was an ambiguity that Judge said if some of these enhancements are inaccurate, I would impose the same sentence. And we said that's — it's not clear where he said if some of these are inaccurate. So there was an ambiguity in Feldman. As Judge Winter pointed out here, Judge — you couldn't be more unequivocal than Judge Sullivan. I read that transcript. He said unequivocally multiple times, whatever the Second Circuit or Supreme Court determined is not going to change my sentence. They could call it a crime of kindness and generosity if they want. So this is as unequivocal as you get. And then he did the second part, which is important. He didn't just robotically say that. He explained in detail why he would impose the same sentence. He talked about what's going to drive this sentence or the facts and circumstances of this crime. And he talked about how dangerous these drugs are. And then he said, coupled with the prior convictions, which, whether they're that he certainly could consider. So he independently gave the reasons for his sentence other than the guidelines. So I don't — I was reading this trying to figure out what more could Judge Sullivan have done to make clear that his sentences would be the same no matter what. What more could he have said? ZUCKERBERG. Your Honor, well, a few points. You have 100 percent accurately characterized the portion of the sentencing transcript where the judge is calculating the guidelines range and saying, you know, it wouldn't matter. I'd have imposed — I'm going to impose the same sentence either way. But if you go to the portion of the sentencing where he actually imposes the sentence at page 125 of the appendix, he is taking the career offender determination as his baseline. I'm going to — just reading from the transcript, it's clear that he was coming — he saw his sentence as a downward variance from the career offender designation. The court says, quote, I'm prepared to come below the government's requested sentence of 188 months or higher. That's the career offender range. Because I think there is a broad range of people who are career offenders. I think you are one. But there are most that are a lot worse than you, most who are probably a little worse. So I'm going to give you that bit of a break. And there's no countervailing evidence in the record that he would have seen in the — under the non-career offender range, that he would have been one of the 2 percent of district judges in the country who impose an upward variance on a sentence. I think the record at least has some doubt, and that's all you need to find, is some doubt that the error in determination of the guidelines made a difference in the sentence. All right. Thank you very much. You have reserved two minutes of rebuttal. We'll hear from the government. Thank you, Your Honor. Good morning, and may it please the Court. Juan Shin for the United States. Your Honor, the sentence imposed by Judge Sullivan should be affirmed on the strength of the Taib case. So just last week, this Court held, of course, that Application Note 1 is valid and that it encompasses an 846 conspiracy. So first, as to the argument that Taib did not address Kisor explicitly. So as Judge Bianco pointed out, it was raised by the defendant in a supplemental brief. It was also the subject of extensive argument during the oral argument before the panel. And I would argue that in addition to footnote 8, as Your Honor pointed out, the reliance on Stinson itself, the continued reliance on Stinson and Jackson itself, is also an implicit recognition that Kisor is simply inapplicable here. And if I could briefly explain for the Court why that is. So the defendant's argument here relies on Kisor but ignores what Stinson actually said. So Stinson itself, it said that the commentary to the guidelines is authoritative because, one, there's a guideline itself that directs that commentary that explains guidelines and how they should be — how the guidelines should be applied. There's a guideline that says that commentary is — But part of the debate is whether this is an expansion or an explanation, right? So that guideline doesn't really answer the question at issue here. Well, I'm making the more general point that what Stinson was doing was saying that commentary is authoritative because there's a guideline that directs you to consider the commentary. In addition, Stinson itself explicitly said, we're relying on seminal rock deference, what today we call more frequently Auer, but we're relying on seminal rock deference as an analogy to what is a unique institutional structure here. And Stinson itself explicitly said at page 44 of that opinion, commentary explains the guidelines and provides concrete guidance as to how even unambiguous guidelines are to be applied in practice. So Stinson itself held that ambiguity is not a threshold requirement for consideration of the commentary. In reliance on that — on that sentence and that holding, this Court in the Padraig case, which is cited in our — in our brief, the Padraig case says no threshold test of ambiguity need be passed. And so what you have is a Kaiser case which does not explicitly overrule Stinson. So Stinson is still there. You have prior Second Circuit precedent that applies that no threshold test of ambiguity holding. And ultimately, it is up to the Supreme Court to say if Stinson has been overruled, as, of course, Your Honors are aware, the Supreme Court frequently says, leave it to us to overrule our own cases. So whatever Kaiser says in the abstract about Auer deference, about — about a threshold test of ambiguity, it's up to the Supreme Court to overrule Stinson. Stinson still is binding Supreme Court precedent. Jackson applies that precedent. And TAB, by continuing to rely on Stinson and Jackson, it implicitly recognized that. Now, of course, there's also this principle that which the defense evokes, this — this notion of questions that merely lurk in the record should not be deemed to have been resolved in a precedential holding. But again, as I noted earlier, it wasn't lurking in the record in the TAB case. It was explicitly raised by the parties, and the panel ultimately implicitly rejected it. So now as to the — the harmlessness argument, so first, I would submit that because TAB resolve — definitively resolves the case that there was no procedural error, that's all the court needs to say. It doesn't need to get to the harmlessness ruling. And it certainly doesn't need to get to the point of saying, well, if TAB didn't control, and if we — if we didn't hold that there was no procedural error, we would find that it was a harmful error. That is the epitome of — of dicta, and essentially an advisory opinion, because TAB controls the case and there's no procedural error. But even if the court were to proceed to the harmlessness issue, again, Judge Sullivan could not have been clearer that he would have imposed the same sentence. What do you have to say to your adversary's observation that notwithstanding Judge Sullivan's repeated references and assertions that he would have imposed the same sentence, that still really, as he's supposed to, he was using the enhanced sentence as his starting point, pointing to that language in his — the sentencing discussion? Right. So — so, of course, Judge Sullivan was doing what a district judge is supposed to do. He calculated the guidelines, and that is one of the 3553A factors that he considers. So once he's calculated them, of course he can explain what he was doing with reference to that range that he calculated. But that needs to be viewed in — in context. And so Your Honor cited the — the language earlier in which he was crystal clear. But I would — I would point out in particular the parallels between this case and JAS. So JAS, even as interpreted by Feldman — so Feldman reaffirmed that JAS, of course, was binding precedent. So Feldman interpreted JAS essentially to require three things. One, the — the district judge has to identify the particular guidelines dispute. Two, there was an acknowledgment in JAS that that could go up on appeal and the Second Circuit could — could very well disagree with me. And three, an unequivocal statement that the same sentence would be imposed. And that's precisely what Judge Sullivan did here. He identified the guidelines dispute at issue, ultimately on appeal, the controlled substance offense issue. He acknowledged that could go up to the Second Circuit and that this Court could disagree with him. And he stated unequivocally that he would impose the same sentence. Their argument is at the very end, when he was imposing the sentence, he — I don't have any exact wording for him. He essentially said, I'm giving you a break from the career offender guideline. And by doing that, seemed to be using it as a measuring point at the very end of his sentence, notwithstanding what he said, you know, earlier in the sentence. So do you want to address that? Right. So, again, this notion that's — that continuing to explain one sentence with reference to the guidelines range that one has calculated, that doesn't — that doesn't undercut what the judge said earlier. He was simply, I think, respectfully complying with what this Court has said. So, for example, the extent of the variance from the guidelines range requires more explanation. So, of course, he's explaining why he's varying 10 months downward from the — excuse me, 28 months downward from the bottom of the guidelines range. But ultimately, one needs to look at his statements and, again, those three factors that occurred in Jass as explained in Feldman. I would point out one other thing. So one thing that occurred in Feldman that contributed to the Court's concern there and the reason why it rejected harmlessness, ultimately, the disputed range there was as between 63 to 78 and 151 to 188. And the sentence imposed in Feldman was 188. It was right at the top of that higher disputed guidelines range. So that was another indication to this Court that the district court there was actually pegging the sentence to that guideline. But again, Judge Sullivan was crystal clear at multiple points in the transcript that this case was being — this sentence was being driven not by the guidelines, but by his particular understanding of the facts, his concern about how serious the fentanyl and heroin offense was, about this defendant's long criminal history, which included nine prior convictions as well as nine other arrests. And ultimately, he gave — he imposed a sentence of 160 months that was not pegged to the particular guidelines range in the way that it was in Feldman. So that fact, in combination with all of the others, counsels in favor ultimately of a harmlessness ruling, which, of course, this Court does not need to get to at all because Tad controls. Thank you. Thank you very much. Mr. Callahan, you have two minutes to rebuttal. Thank you, Your Honors. Just a few points. First, with respect to Kisor and Stinson, I really don't know how Kisor could have been clearer about this. Kisor in footnote 3 cites Stinson as an example of a case applying seminal rock deference. Seminal rock standard is about plain error or inconsistency. Kisor then proceeds to say that standard is too lenient for agencies. You have to look to the text of the agency's rule first to hear the guidelines and determine whether there's ambiguity before looking to what the agency did. The approach taken in Stinson in the portion that my friend on the other side quoted, it's just not consistent with that, to say that you can have unambiguous guidelines and then have the agency interpret them. If this was presented to the court in TAB, even if they didn't discuss Kisor explicitly, can't we presume that it was still rejected roundly in order to have reached the conclusion the TAB court reached? Your Honor, my understanding of this court's precedent about the effect of precedent is that when you don't even mention a decision, we really have no idea what the TAB court thought about Kisor. Reliance, continue reliance on Stinson, as your adversary points out. That's correct, but Your Honor, I think that the relevant portion of Stinson that the other side is relying on has been undercut by Kisor explicitly in that it cites Stinson and that it applies a fundamentally different approach to interpreting the relationship between guidelines and commentary. I would, I think if a court today said this guideline is unambiguous and yet let's see what the agency said, that is a reversible error. I just want to spend a few seconds on harm. So you're urging us as a panel to reject really the decision issued last week in TAB for having failed to address Kisor. Your Honor, I don't think you have to reject its reasoning. I think you have to apply different reasoning based on binding Supreme Court precedent that was not addressed in that decision. And I think regardless of whether you agree with me, you are absolutely at liberty to hold that this error was not harmless. That's exactly what the court did in Feldman. Do you know if a motion for reconsideration raising this point is pending in TAB? I don't know if there's a motion for reconsideration. I don't believe there is as of my last check of the docket. But just to quickly say that in United States versus Feldman, the government also asked that the court not reach the error so that, and instead to find the error harmless, it found the error harmless and then found no errors. It's not an advisory opinion. It serves a great guidance function. And I, the standard for harmless error is whether there's any doubt as to whether the court would have imposed the same sentence. The fact that in some parts of the points of the transcript, it suggests he may have done the same thing. And in other points, he's consistently referring to what he's doing as a downward variance. And under the non-career and offender range would have had to impose a 10-month upward variance to impose a 160-month sentence. I think at least creates some doubt as to whether the court would have imposed the exact same sentence under a non-career offender range. Thank you very much. We'll take the matter under advisement. Very well argued. Thank you. The next case.